CHARLES B. HAZELTINE and another

*vs.*

ABBIE F. VOSE and another.

Waldo.    Opinion June 5, 1888.

*Will.   Legacy.   "Home of Little Wanderers."   "Home of Aged Women."*

A testator in his will gave " to the institution for the Home of Little Wanderers, $1000," and "to the institution for the Home of Aged Women, $1000," and provided that these " bequests are to be given to said institutions of the State of Maine, if any such exist at my decease, or by the time said bequests are ready to be paid by my executors; if not, to be given to those of Massachusetts, if any such exist at my decease."   *Held*, that the terms applied to the institutions were used as descriptive of the object and purpose of organization, rather than as names to identify particular institutions.

*Held further* that the Children's Home of Bangor takes the first legacy, and that the other legacy must be divided equally between four institutions : The Home for Aged Women of Bangor, Old Ladies' Home of Bath, Home for Aged Women of Portland, and the Old Ladies' Home of Saco and Biddeford.

ON report.

Bill in equity by the executors of the last will and testament of Paul R. Hazeltine, deceased, for a construction of the will.

*Thompson and Dunton*, for the executors.

*Wm. H. Fogler*, for the residuary legatees.

In determining this question the intent of the testator is to govern ; and it is the intention expressed in the will and not otherwise.    *Tucker & al. Exrs.* v. *Seamen's Aid Soc.* 7 Met. 188 ; *Howard* v. *American Peace Soc.* 49 Maine, 288 ; *Cotton* v. *Smithwick*, 66 Maine, 360.

"Conjecture is not permitted to supply what the testator has failed to indicate ; for as the law has provided a definite successor in the absence of disposition, it would be unjust for this ascertained object to be superseded by the claim of any one not pointed out by the testator with equal distinctness."    1 Jar. on Wills, § 376.

Redfield states the rule to be that a legacy will be void for

uncertainty when it becomes mere guess, or conjecture, after all the aids derivable from extrinsic evidence, what the testator did mean.   2 Redfield on Wills, c. 3, § 1, cl. 50.

A devise is declared void when "after resort to oral testimony, it still remains mere matter of conjecture what was intended by the instrument."   *Townsend* v. *Downer*, 23 Vt. 225.

In *Bull* v. *Bull*, 8 Conn. 47, it is laid down that a mere misdescription of the legatee does not render the legacy void, unless the ambiguity is such as to render it impossible, either from the will or otherwise, to ascertain who was intended as the object of the testator's bounty.

"It is laid down by Swinburne, that a bequest to any person by name, where there are two persons by the same name, and no means of determining which was intended, must be wholly void and we do not perceive any ground for escape from such a result." 2 Red. c. 3, § 1, cl. 4.

"If it appears by evidence dehors the will that there are two or more persons or subjects that would come within the words of the will, parol evidence may be received to show which was intended.   But if the ambiguity is apparent on the face of the will, the court must give it a construction, if it can be done.   If it cannot be interpreted then the devise must in general fail, and cannot be aided, by extrinsic evidence.   *Pickering* v. *Pickering*, 50 N. H. 350.

In *Richardson* v. *Watson*, 4 Barn. & Adolph. 787, the testator devised "the close in the occupation of *Watson*."   It was shown that there were two closes of the testator in the occupation of *Watson*.   *Held*, that the devise was void for uncertainty.

In Lord CHEYNEY's case, 5 Rep. 68, b. a father made a devise to his son John.   The testator in fact had two sons living named John.   The court held that one might introduce proof that the father thought the other was dead, but added "If no direct proof can be made of his intent, the devise is void for uncertainty."

"It is clear that when part of the description in the will applies to one person, and part to another, parol evidence is admissible for the purpose of showing which of the imperfectly described

individuals was meant to be the object of the gift. This proposition however, supposes that each of the respective claimants is sufficiently designated by that part of the description which applies to him, to have established a title under the will, if the competing claim of the person answering to the other part of the description were out of the way." 1 Jarman, 376.

"If a devisee be one of the sons of J. S., (he having several sons) the devise is void for uncertainty." 1 Jarman, 323.

In *Tucker & al. Exrs.* v. *Seaman's Aid Soc.* 7 Met. 188, it is stated p. 208, that when there is no person, taking name and description together, who answers to the name and description in the will, and upon proof of facts and circumstances to enable the court to infer who was intended, if the proof does not so preponderate in favor of either as to enable the court to determine who was intended, the bequest will be held void for uncertainty. Cites *Thomas* v. *Thomas*, 6 T. R. 671.

The court is to determine the intention of the testator, if it can be determined, from the will itself in connection with facts and circumstances tending to explain such intention. 'Neither by testimony, or by conjecture, is the court to supply or contradict, enlarge or vary, the words of a will. *Pickering* v. *Pickering*, 50 N. H. 350.

A gift by will to be certain requires a definite subject and object and cannot stand if either be wanting. Schouler on Wills, § 591.

Heirs at law are not to be disinherited by conjecture, but only by express words or necessary implication. *Howard* v. *Am. Peace Soc.* 49 Maine, 288.

"If after every endeavor, the judicial expositor finds himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence." Schouler on Wills, § 591.

The rules and principles applicable to cases of ambiguity in the language of wills are discussed and laid down in *Miller* v. *Travers*, 8 Bing. 244; *Tucker* v. *Seaman's Aid Soc.* 7 Met.

188; *Howard* v. *American Peace Soc.* 49 Maine, 288. See also language from 4 Russ. R. and Gadb. Rep. 131.

An examination of all the cases in which the court has held legacies valid when the identity of the legatee was in question will show that in every case the court has been able, from the language of the will, and from the extrinsic circumstances to determine the intention of the testator. Such was the case in *Howard* v. *Am. Peace Soc. supra*; *Straw* v. *Societies*, 67 Maine, 493; *Bartlet et al.* v. *King, Exr.* 12 Mass. 537; *Going* v. *Emery*, 16 Pick. 107; *Winslow* v. *Cummings*, 3 Cush. 358; *Bliss* v. *Am. Bible Soc.* 2 Allen, 3?4; *Hornbeck, Exr.* v. *Am. Bible Soc.* 2 Sand. 145.

It may be claimed that because the court is unable to determine what institution was intended by the testator, the one thousand dollars should be divided among all the claimants, or among all the Homes for Aged Women in this state.

Redfield suggests such a mode of escape in case of a bequest to a person by name, and there are two or more persons of the same name, and no means of determining which was intended; but adds "But no such rule is yet established." 2 Redfield, c. 3, § 1, cl. 4.

Schouler on Wills, § 593, says, "It is said that where there are two charities bearing the same name, and it cannot be ascertained which of them is intended, the legacy will be divided between them; a doubtful example, for in so extreme a case, and supposing extrinsic proof left one's intention balanced, the analogy ought to hold good in the case of individuals."

But the court is to determine and carry out the intention of the testator. It cannot enlarge or vary the terms of the bequest.

The courts have held that it was their duty to carry out the clearly expressed wishes of the testator, in which the legacy is given to a general class of persons or associations, when no trustee has been named by the testator. Of this class is *First Universalist Soc.* v. *Fitch & Al. Admrs.* 8 Gray, 421.

*Geo. E. Johnson*, for Baldwin Place Home for Little Wanderers.

This claimant is a charitable institution, and that this is a charitable bequest there can be no question. Schouler on the Law of Executors, section 464 and cases cited, and note to section 465.

In *Preachers' Aid Society* v. *Rich*, 45 Maine, 559, it is said, "The court will take care if possible, in cases of charitable gifts, to give them effect."

See *Hinckley* v. *Thatcher*, 138 Mass. 477. In this case the court held that extrinsic evidence of the facts known to the testator at the time he executed the will; the names by which the missionary societies were called by him, and his interest in any particular society, was admissible to identify the society intended. To the same effect is *Nason* v. *First Bangor Christian Church*, 66 Maine, 100. In this case the court, on page 105, say, "It is familiar doctrine that in the construction of will the court will place themselves, as far as practicable, in the posititon of the testator, and give effect to his leading purpose and intention as indicated by the words of the will construed with reference to all attending circumstances." See also *Howard Exr.* v. *Am. Peace Soc.* 49 Maine, 288.

*A. W. Paine*, for the Home for Aged Women of Bangor, and Children's Home of Bangor, cited: *Nason* v. *Bangor Christian Church*, 66 Maine, 105; *Hawley* v. *Northampton*, 8 Mass. 3; *Straw* v. *East Maine Conference*, 67 Maine, 493; *Howard* v. *Am. Peace Society*, 49 Maine, 288; *Sohier* v. *St. Paul's Church*, 12 Met. 250; *Tucker* v. *Seamen's Aid Society*, 7 Met. 188; *Minot* v. *Boston Indigent Boys' Asylum*, 7 Met. 416; *Winslow* v. *Cummings*, 3 Cush. 358; *Sutton Parish* v. *Cole*, 3 Pick. 232; *Saltonstall* v. *Sanders*, 11 Allen, 446; *Jackson* v. *Phillips*, 14 Allen, 539; *Fellows* v. *Miner*, 119 Mass. 541; *Odell* v. *Odell*, 10 Allen, 1; *Old South Soc.* v. *Crocker*, 119 Mass. 1; *Massachusetts Soc.* v. *Boston*, 142 Mass. 24; *Kent* v. *Dunham*, 142 Mass. 216; *Phila. Bap. Asso.* v. *Hart*, 4 Wheat. 1; *Inglis* v. *Sailor's Snug Harbor*, 3 Pet. 99; *Vidal* v. *Girard*, 2 How. 127; *McDonogh* v. *Murdoch*, 15 How. 367; *Perin* v. *Cary*, 24 How. 465; *Loring* v. *Marsh*, 6 Wall. 337;

*Russell* v. *Allen*, 107 U. S. 163 ; *Jones* v. *Habersham*, 107 U. S. 174 ; *Ould* v. *Washington Hospital*, 95 U. S. 303 ; *North Adams Universalist Society* v. *Fitch*, 8 Gray, 421.

*Joseph Williamson*, for the Home for Aged Women of Portland, cited : *Preachers' Aid Soc.* v. *Rich*, 45 Maine, 552 ; *Re Kilvert's Trusts*, L. R. 7 Ch. App. 170 ; *Re Alchin's Trusts*, L. R. 14 Eq. Cas. 230.

*R. P. Tapley*, for Old Ladies' Home of Saco and Biddeford, cited : *Doe* v. *Perratt*, 6 Man. & G. 359 ; *Den* v. *McMurtrie*, 15 N. J. L. 276 ; *Greenland Cong. Soc.* v. *Hatch*, 48 N. H. 393 ; 2 Redf. Wills. c. 3, cl. 48, 50 ; c. 1, § 2, cl. 2 ; *Swasey* v. *Am. Bible Soc.* 57 Maine, 523 ; 1 Perry, Trusts, § 66 ; *Straw* v. *East Maine Conference*, 67 Maine, 493.

*C. W. Larrabee*, for Old Ladies Home of Bath.

DANFORTH, J.    The complainants ask for an interpretation of a part of the fifth item of their testator's will, which reads as follows, viz : "I give and bequeath, at my wife's decease, out of my estate left her by me during her life, to the institution for the Home of Little Wanderers, one thousand dollars, ($1000) ; and to the institution for the Home of Aged Women, one thousand dollars, ($1000) ; each of said bequests to be safely and permanently invested and held in trust by each of said institutions, the income only of which to be used annually, for the benefit of the occupants of said institutions forever.    These . . . bequests are to be given to said institutions of the State of Maine, if any such exist at the time of my decease, or by the time said bequests are ready to be paid by my executors ; if not, to be given to those of Massachusetts, if any such exists at my decease."

In this provision we find a specific sum of money bequeathed for the benefit of two classes of people—little wanderers, or indigent children, and aged women in need of assistance.    This is made clear from the language used.    The terms applied to the institutions are evidently used as descriptive of the object and purpose of their organization rather than as names to identify

the particular institution which is to take. While, it is from extrinsic testimony in the case rendered quite certain that when the testator made his will he had in his mind "The Baldwin Place Home for Little Wanderers," yet it is equally certain that he so had it as an illustration of the character of the institution he wished to aid rather than the particular one to be aided; for, a part of the very clause in question provides that in the uncertain future when the legacy is to be paid, if "any such" shall exist in Maine, that shall have the preference. So with regard to the other legacy; the fact that at the execution of the will, many institutions for the aid of aged women were in existence and that the testator by the terms used referred to one, leads to a very satisfactory conclusion that he had knowledge of the existence of one or more, as well as of the class of persons to be aided by them. There can then, be no doubt as to the class of persons to be aided, the *cestui que trust* in each case of the testator's bounty, and that the gift is a charitable one. The will must therefore be sustained, and if the testator has not provided for an execution of the trust the court will. *Howard* v. *Peace Society*, 49 Maine, 288; *Preachers' Aid Society* v. *Rich*, 45 Maine, 552; *Straw* v. *Societies*, 67 Maine, 494; *Nason* v. *First Church*, 66 Maine, 100.

Has the testator provided trustees for the management of his bounty? From the considerations already suggested, the answer must be in the affirmative. For the legacy in aid of Little Wanderers, there are two applicants, one in Massachusetts and one in Maine. If the name alone were to govern it is, under the circumstances, near enough to the true name to give it to "The Baldwin Place Home for Little Wanderers," but by the express terms of the will if there is "any such" institution in Maine, "when the bequests are ready to be paid" that is to have the preference. Using as we must the name only as descriptive of the character of the institution intended by the testator as the recipient of the legacy, we find from the constitution and by-laws of the Bangor Children's Home, which are in the case, that, that is "such" an institution as the testator contemplated, that its object and purpose is the same as that of the Baldwin Place

Home. The legacy for homeless and indigent children must therefore be paid to that institution.

In regard to the other legacy it is evident that the testator had in his mind no particular institution, though he used the definite article and the singular number, "The institution." It was plainly in his mind that some then in existence might not be when the legacy was to be paid, or that others might be organized. He described the organization he wished to aid, the object to which he desired his money to be devoted, and left it to be settled, when the time of payment came, to what institutions it should be paid. For this legacy there are four applicants, all from Maine, and all from their organization having the same object and purpose in view, all answering the description in the will. They are all therefore "*such*" institutions as the testator contemplated. We see nothing inconsistent with the testator's expressed intention, in dividing this legacy among the four. On the other hand the words used in the will "if there are *any such*" in Maine, would seem to authorize it. Another consideration tends the same way. These organizations are all local in their operation. In the bequest there is no limit arising from the residence of the beneficiaries. It would therefore seem to be more in accordance with the testator's intention to make the division.

The result is that one of the legacies is to be paid to "The Bangor Home for Children," the other to be equally divided between the four applicants therefor.

*Decree accordingly.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and EMERY, JJ., concurred.